**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| J.K.,<br>Plaintiff,<br>v.<br>MAIN STREET LODGING, INC., *doing business as* SUNDOWN SUITES,<br>Defendant. | Civil Action No.<br>1:24-cv-02031-SDG |

**OPINION AND ORDER**

This case is before the Court on Defendant Main Street Lodging, Inc.'s motion for summary judgment [ECF 115]. Because there are genuine disputes of material fact as to the elements of Plaintiff J.K.'s claims for violation of the Trafficking Victims Protection Reauthorization Act, premises liability, and nuisance, Main Street's motion is **DENIED**.

## I. PROCEDURAL BACKGROUND

In May 2024, J.K., proceeding under a pseudonym, filed a complaint against Main Street alleging that she was a victim of sex trafficking at the Sundown Suites hotel in Jonesboro, Georgia, owned and operated by Main Street.[1] J.K. brings three claims: (1) a civil beneficiary claim under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595; (2) a state law premises liability

[1] ECF 1.

claim; and (3) a state law nuisance claim.[2] J.K. subsequently amended her complaint to add Asha Management, LLC as a Defendant.[3] After the close of discovery, Main Street and Asha moved for summary judgment on all of J.K.'s claims.[4] The Court held oral argument on Defendants' motion on July 14, 2026, during which J.K. agreed to dismiss her claims against Asha.[5] J.K.'s claims against Main Street remain pending, and Main Street's motion is ripe for resolution.

## II. FACTUAL BACKGROUND

Over a period of 7 days in August 2019, then-15-year-old J.K. was trafficked for sex at the Sundown Suites hotel.[6] Her traffickers, Theodore Browne, Jr. and Christopher Weldon, are not parties to this litigation. J.K. was homeless when she met Browne and began sleeping in his car.[7] Browne asked J.K. to participate in commercial sex, and while she said she did not want to, she felt that she did not have a choice.[8] Browne was later tried and convicted of sex trafficking J.K. at the Sundown Suites and sentenced to 70 years in prison.[9] Weldon pled guilty to sex

---

2 *See id.*

3 ECF 88.

4 ECF 115.

5 ECFs 152, 153.

6 ECF 144, ¶ 1.

7 *Id.* ¶ 4.

8 *Id.* ¶ 5.

9 *Id.* ¶ 2.

trafficking J.K. and statutory rape of J.K. and was sentenced to 25 years, 15 to be served in confinement.[10] These facts are undisputed.

The crux of this case is what Main Street knew (or did not know) and did (or did not do) about the trafficking of J.K. In opposing Main Street's motion, J.K. presents evidence of the following. Between January 2013 and August 2018, police responded to the Sundown Suites 135 times.[11] Local police also conducted multiple prostitution stings at the hotel, resulting in arrests.[12] Police and residents testified that there was considerable drug and prostitution activity occurring at the Sundown Suites, much of it out in the open.[13] Despite this, local police found hotel management resistant to calling the authorities and uncooperative.[14]

When J.K.'s traffickers checked into the hotel, they were assigned a room on the backside of the hotel.[15] A former Main Street employee testified that guests engaging in prostitution were always assigned rooms on the backside of the

---

10 *Id.* ¶ 3.

11 *Id.* ¶ 17.

12 *Id.* ¶ 18.

13 *Id.* ¶¶ 19, 23–26, 28–29. To the extent this testimony was opinion, it was proper lay witness opinion testimony under Fed. R. Evid. 701.

14 ECF 144, ¶¶ 21–22.

15 *Id.* ¶ 6.

hotel.[16] Nearly the entire hotel property was covered by surveillance cameras.[17] These cameras would have recorded the foot traffic of approximately 60 men visiting the room rented by J.K.'s traffickers over the period of a week.[18] Indeed, at one point during that week, Weldon was told by hotel staff that there was too much traffic to the room.[19]

Weldon went to the hotel's front desk to renew the room each day.[20] The traffickers paid $70 per night for the first three nights—from Wednesday, August 1, to Friday, August 3—then $75 per night from Saturday, August 4, to Monday, August 6, and finally $80 for their last night on Tuesday, August 7.[21] A former resident testified that Main Street had a practice of charging guests extra if it knew they were engaged in prostitution.[22]

---

16 *Id.* ¶ 32. This was proper lay witness opinion testimony under Fed. R. Evid. 701.

17 ECF 144, ¶ 37.

18 *Id.* ¶ 7. J.K. testified that she engaged in commercial sex with approximately eight to 10 men per day during her time at the Sundown Suites. ECF 122-1, at 191:10–20.

19 ECF 144, ¶ 9.

20 *Id.* ¶ 10.

21 *Id.* ¶ 16; *see also* ECF 120-2.

22 ECF 144, ¶ 27. Main Street objects to this testimony as inadmissible hearsay and not based on personal knowledge. However, the witness testified that he knew Main Street charged extra in part because he witnessed some of the transactions. ECF 120-6, at 21:11–22:14. This is "sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Weldon also refused housekeeping services for the room for the entire week.[23] Main Street's owner and manager testified that the hotel had a policy that each room must be cleaned daily, and if a guest refused cleaning, then management would speak with the guest.[24] In any case, the room was never cleaned by hotel staff during the week when J.K. was trafficked.[25]

## III. APPLICABLE LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id.* A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

---

23 ECF 144, ¶ 11. J.K.'s testimony is sufficient to support a finding under Fed. R. Evid. 602 that she personally witnessed Weldon refuse housekeeping services. ECF 122-1, at 183:13–184:10.

24 ECF 120-12, at 79:10–23.

25 ECF 122-1, at 183:13–184:10.

477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (citations omitted).

The Court views the evidence in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Id.* Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

## IV. DISCUSSION

Briefing on Main Street's motion was completed on January 23, 2026.[26] Subsequently, on March 30, the Eleventh Circuit issued its opinion in the consolidated appeals of *A.G. v. Northbrook Industries, Inc.*, 171 F.4th 1257 (11th Cir. 2026), which clarified the summary judgment analysis for TVPRA and premises liability claims following its earlier opinion in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). At oral argument in this case, the parties thoroughly discussed the implications of *A.G.* for Main Street's motion. The Court concludes that, under *A.G.*, J.K. has presented sufficient evidence from which a reasonable jury could find that Main Street knowingly benefitted from participation in a venture involving her being trafficked at its hotel, in violation of the TVPRA; breached its duty to exercise ordinary care to protect J.K. from injuries on its premises at the hands of third parties; and maintained a dangerous criminal condition on its property, causing J.K.'s injuries. Accordingly, Main Street's motion for summary judgment is denied.

### A. TVPRA Beneficiary Claim

The TVPRA provides a civil cause of action for violations of its provisions "against the perpetrator (**or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person**

---

26 ECFs 143, 144.

**knew or should have known has engaged in an act in violation of this chapter**)." *A.G.*, 171 F.4th at 1268 (quoting 18 U.S.C. § 1595(a)) (emphasis in original). This type of claim is referred to as a "beneficiary claim." *Id.* (quoting *Red Roof*, 21 F.4th at 726).

A TVPRA beneficiary claim has four elements: the defendant "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Id.* (quoting *Red Roof*, 21 F.4th at 726). Only the second and fourth elements are at issue here.[27]

**1. Participation in a Venture**

As to the second element, J.K. must show that Main Street "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* (quoting *Red Roof*, 21 F.4th at 725). "Merely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture,'" but instead, "something more than engaging in an ordinary buyer-seller transaction is required." *Id.* at 1269 (citations omitted). The

---

27 ECF 115-1, at 7–8.

"something more" issue is "fact-specific," but it "may include offering 'personalized support' to a sex trafficker." *Id.*

In *A.G.*, the Eleventh Circuit concluded in one of the consolidated cases that evidence that the defendant hotel had "policies in place to facilitate sex trafficking," ***plus*** "evidence that [defendants] applied those policies to [the trafficker] to enable his sex trafficking operation," was sufficient to withstand summary judgment. *Id.* at 1272. In particular, there was evidence that the defendants: (1) "would routinely place sex offenders in the same area of the same building of the hotel . . . to protect sex offenders engaging in prostitution or sex trafficking from being reported by other guests"; (2) "instructed [a housekeeper] to only clean sex offenders' hotel rooms once a week and limit how often she cleaned prostitutes' rooms"; (3) "moved [the trafficker] to a room in the area where former employees testified that sex offenders were routinely placed"; and (4) "rented a second room by the night to [the trafficker], which was next door to his room"; and (5) "instructed [hotel] staff not to clean [the trafficker's] second room, and no one did." *Id.*

In the other consolidated case addressed in *A.G.*, the court similarly concluded that "[a] jury could reasonably infer based on the unusual occurrence when [the victims] were locked out paired with [the defendant's] apparent friendliness toward and awareness of sex trafficking on its property that [the

defendant] supported and cooperated with [the trafficker's] sex trafficking operation." *Id.* at 1271.

Returning to this case, J.K. has presented evidence that Main Street provided personalized support to her traffickers and therefore participated in their venture. Viewed in the light most favorable to J.K. as the non-movant, this includes, but is not limited to, evidence that the Sundown Suites was the site of significant and obvious criminal activity, including multiple prostitution stings, but Main Street was resistant to calling the police and uncooperative when they arrived; Main Street placed J.K.'s traffickers on the backside of the hotel, where it put other guests engaging in prostitution, out of public view; Main Street permitted J.K.'s traffickers to refuse housekeeping services for a week, in violation of its own policies, to avoid discovery by hotel staff; Main Street staff alerted J.K.'s traffickers that there was too much traffic in the room, as a warning to avoid detection; and Main Street charged J.K.'s traffickers a higher nightly room rate, as it did with other guests engaging in criminal activity on the premises. Taken together, this is sufficient to satisfy the second element of J.K.'s TVPRA claim.

**2. Actual or Constructive Knowledge**

As to the fourth element, J.K. must show that Main Street had "constructive or actual knowledge that the undertaking or enterprise violated the TVPRA." *Id.* at 1270. *A.G.* held that *Red Roof*'s earlier discussion of the knowledge element was

dicta and therefore non-binding, and so a plaintiff need not show that the defendant knew the identity of the specific plaintiff-victim. *Id.* Instead, J.K. need only show that Main Street knew that ***a person*** was trafficked. *Id.* Thus, J.K. can satisfy the fourth element by showing that Main Street had actual or constructive knowledge that Weldon and Brown were sex trafficking. *Id.* at 1273.

The evidence as to the "participation in a venture" element overlaps considerably with this knowledge element. If Main Street was charging J.K.'s traffickers a higher nightly room rate on account of their trafficking activity, it follows that it knew or should have known there was trafficking. In *A.G.*, the court also held that a jury could reasonably infer that the trafficker's refusal of housekeeping services "should have been a red flag to" the defendant hotel, especially considering the evidence that the defendant "had a policy of turning a blind eye to sex crimes on its property and applied that policy to [the trafficker's] second room rental," such that "a reasonable, diligent hotel operator would not operate this way." *Id.* Based on the similar evidence in this case, J.K. has presented sufficient evidence to satisfy the knowledge element of her TVPRA claim.

Accordingly, Main Street's motion for summary judgment is denied as to J.K.'s TVPRA beneficiary claim.

**B. Premises Liability**

*A.G.* is also directly on point as to J.K.'s premises liability claim. *A.G.* held that there was sufficient evidence to create a jury question as to whether the trafficking victims were invitees, such that the defendants had a duty to protect them "from injuries by third parties if they are reasonably aware of the probability of the injuries, and the injuries could have been avoided had the landowners exercised ordinary care and diligence." *Id.* at 1275. In particular, the court held that the defendant hotel "stood to benefit from [the victims'] presence," as their "presence allowed [the defendants] to rent their hotel room to sex traffickers," and the victims "were also guests of their traffickers, who were paying guests at" the hotel. *Id.* Therefore, the victims were on the property for a lawful purpose, and that was not negated by the fact that they "were also victims of illegal child sex trafficking at" the hotel. *Id.*

J.K. has presented similar evidence here. Her traffickers were paying guests at the Sundown Suites, and so there is sufficient evidence for a reasonable jury to conclude that J.K. was an invitee, and therefore Main Street owed a duty to protect her from injuries by third parties, *i.e.*, her traffickers. Thus, considering the evidence that Main Street knew of the prostitution occurring at its hotel in general and of Weldon and Brown's trafficking activities in particular, it is for the jury to decide whether Main Street failed to exercise ordinary care to protect J.K. from

being trafficked on its premises, and whether that failure was the proximate cause of her injuries. *Bethany Grp., LLC v. Grobman*, 315 Ga. App. 298, 301–02 (2012).

Main Street also argues that J.K.'s claim should be barred because she had superior knowledge of her traffickers' dangerous propensities. However, *A.G.* covered this as well, holding that "equal or superior knowledge cannot bar [the victims'] recovery if they did not voluntarily assume the risk of being sex trafficked at [the defendants' hotel] without coercion," and that "even if the superior knowledge rule applied, the extent of [the victims'] knowledge of the danger and whether they exercised reasonable care is a question for a jury." 171 F.4th at 1276. Accordingly, Main Street's motion for summary judgment is denied as to J.K.'s premises liability claim.

**C. Nuisance**

Lastly, Main Street seeks summary judgment on J.K.'s nuisance claim, contending that J.K. did not "file her claim for nuisance under either statute"—presumably a reference to the distinction between public and private nuisance, which, in any case, is addressed in the same Code section, O.C.G.A. § 41-1-2—making the nuisance claim "improper and void," and that J.K. has no evidence that Main Street maintained a "dangerous criminal condition" that caused her injuries.[28] As to the first argument, Main Street did not cite any authority for the

---

[28] ECF 115-1, at 19.

proposition that J.K.'s failure to reference the statute in her operative complaint "void[s]" the claim. Nor does the public/private distinction appear to be a dispositive issue here. To begin with, "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. To prevail on her nuisance claim, then, J.K. must show that Main Street "created or maintained a continuous or regularly repeated act or condition on the property, which caused [her] injury." *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (2003) (citing § 41-1-1; *Banks v. Mayor & City of Savannah*, 210 Ga. App. 62 (1993)).

"A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals," whereas "[a] private nuisance is one limited in its injurious effects to one or a few individuals." O.C.G.A. § 41-1-2. Georgia courts have held that evidence of repeated instances of criminal activity on the defendant's property can constitute a public or private nuisance. *See, e.g.*, *Moreland v. Cheney*, 267 Ga. 469, 469 (1997) (public); *Bethany Grp., LLC*, 315 Ga. App. at 302 (private). A private nuisance gives a right of action to the person injured. O.C.G.A. § 41-1-4. However, "[a] public nuisance generally gives no right of action to any individual," except where "a public nuisance in which the public does not participate causes special damage to

an individual." O.C.G.A. § 41-1-3. Personal injury is one such type of special damage. *See Savannah, F. & W. Ry. Co. v. Parish*, 117 Ga. 893, 45 S.E. 280, 280 (1903) ("But the public cannot be said to enjoy health or suffer sickness. In the very nature of things, that can only be predicated of the individual. Whatever affects his health affects him specially, and him alone. Such damage is special damage within the meaning of the Code.").

Viewing the aforementioned evidence in the light most favorable to J.K., a reasonable jury could find that Main Street "created or maintained a continuous or regularly repeated act or condition" at the Sundown Suites, "which caused [J.K.'s] injury," as "[t]he record contains ample evidence of repeated instances of" prostitution at the hotel. *Bethany Grp., LLC*, 315 Ga. App. at 302. This evidence also "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [Main Street] was a cause in fact of" J.K.'s personal injuries, as a reasonable jury could infer that pervasive prostitution would lead to sex trafficking, and therefore the issue of causation is one for the jury. *Bord v. Hillman*, 335 Ga. App. 18, 21 (2015) (citations omitted). Thus, J.K. has put forward sufficient evidence to support a claim of either private or public nuisance.

Accordingly, Main Street's motion for summary judgment is denied as to J.K.'s nuisance claim.

## V. CONCLUSION

Main Street's motion for summary judgment [ECF 115] is **DENIED**. For the reasons stated in the Court's June 21, 2024 Protective Order [ECF 17], the parties' motions to seal [ECFs 117, 123] are **GRANTED**. The Clerk is **DIRECTED** to permanently seal ECFs 116 and 122.

The parties are **DIRECTED** to submit a joint proposed consolidated pretrial order within 30 days of this Order. The parties are further **ADVISED** to file any necessary Notice of Leave of Absence on the docket within 30 days of this Order, as a pretrial conference and trial will be scheduled thereafter without further notice. Counsel may include on this Notice any dates that conflict not only for themselves, but also for their clients or designated client representatives, as well as key witnesses. The Notice should include any conflicting dates from January through August 2027.

Best efforts will be made to avoid conflicting dates, but given competing scheduling demands, this cannot be guaranteed. For this reason, counsel are encouraged to only include dates in the Notice that are truly in need of protection.

The Clerk is further **DIRECTED** to submit this Order to undersigned after 30 days.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge